IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Larry James, | ) | C/A No. 2:03-1022-18 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** and **OPINION** |
| Pratt & Whitney, United | ) | |
| Technologies Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### I. Background

Plaintiff Larry James ("plaintiff") initiated this action on February 6, 2003 with a complaint alleging three causes of action against defendant United Technologies Corporation, Pratt & Whitney Division ("defendant"): (1) civil conspiracy; (2) intentional interference with contractual relations; and (3) intentional infliction of emotional distress. On February 10, 2004 this court granted defendant's motion to dismiss the civil conspiracy and emotional distress claims. On February 23, 2004 the parties agreed to dismiss the intentional interference with contractual relations claim.

Plaintiff appealed the court's February 10, 2004 order. On March 23, 2005, the Fourth Circuit affirmed the dismissal of the contractual relations claim, but reversed and remanded the dismissal of the civil conspiracy claim. Based in part on the Fourth Circuit's instructions to this court, defendant filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to the sole remaining claim of civil conspiracy.

## II. Factual Background

Plaintiff is currently employed at the Charleston Air Force Base as an airline mechanic at United Airlines, Inc. During the time in question he was lead mechanic for the evening shift. Plaintiff's duties include maintenance on C-17 Globemaster aircraft engines for the United States Air Force. These engines were originally designed and built by Pratt & Whitney, which currently contracts with United Airlines for their continued maintenance. It is clear, however, that plaintiff is an employee of United Airlines, not defendant.

With this action, plaintiff alleges that in 2000, a mechanic working under his supervision "discovered a crack in the ceramic surrounding a fuel injector in one of the engines, and reported the damage to [plaintiff]," who "oversaw the employee's completion of the form noting the damage, and concurred in the mechanic's decision to report the damage." (Compl. ¶¶ 11-13.) However, shortly after the report was submitted, a foreman for United Airlines confronted the mechanic and plaintiff and "demanded that [the mechanic] withdraw his report, line through it, and write 'entered in error' on the form so that the damaged engine could be presented to the Air Force as ready for service without repair to the damaged fuel injector." (Id. at ¶¶ 14-15.) Plaintiff refused to falsify the report. Some time later, after they had given their "final word" to this effect, plaintiff alleges that Bill Williams, a representative of Pratt & Whitney, "began to frequently appear at the [plaintiff's] work area, subjecting [plaintiff] to heightened surveillance and observation" and creating a "hostile work environment" for plaintiff "in retaliation for his having refused to falsify maintenance records for the C-17 engines." (Id. at ¶¶ 25-26.) Plaintiff then alleges that Bill Williams and Mr. Baxter, his foreman at United Airlines,

intentionally interfered with his work progress and subsequently "created unsupported and unjustifiable records indicating that [plaintiff's] work was unjustifiably slow on the [aircraft] engines." (Id. at ¶¶ 33-35.)

Subsequently, plaintiff was presented with a "Level 5" disciplinary notice and was terminated on the basis that "[p]laintiff had instituted and engaged in a work slow down, in violation of [a Temporary Restraining Order issued to United Airlines concerning work stoppages or slowdowns which was] presented to him." (Id. at ¶ 36.) Plaintiff was out of work with United Airlines for approximately five months, but was reinstated to his position after United Airlines "was unable to legitimately support claims that there was any slowdown related to the work of the mechanics" as a result of plaintiff's activities. Plaintiff alleges, however, that this reinstatement occurred "without [United Airlines] addressing the injuries and losses of about five months salary and other monetary and non-monetary benefits, which he had suffered as a result of the termination." (Id. at ¶ 38.) Plaintiff subsequently filed this action.

In his Complaint, plaintiff alleges that as a result of defendant's intentional, willful and malicious actions he was terminated by United Airlines for refusing to "falsify maintenance documents" and suffered the following damages: (a) lost wages; (b) lost benefits; (c) consequential economic damages; (d) severe emotional distress; and (e) injury to his reputation as a mechanic and union member in a leadership position. (Id. at ¶ 39.) As defendant points out, this list of claimed damages is alleged with respect to each and every cause of action without change.

**III.  Standard of Review**

Summary judgment is proper only when there is no genuine issue of material fact. FED. R. CIV. P. 56(c). The moving party has the burden of showing the absence of any genuine issue of material fact and that he is entitled to judgment as a matter of law. Barwick v. Celotex Corp., 736 F.2d 946, 958 (4th Cir. 1984). This burden may be met through the use of depositions, sworn affidavits, and other discovery materials. Id. To grant summary judgment, the court must determine that no reasonable jury could find for the nonmoving party on the evidence before it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Consequently, in evaluating a motion for summary judgment, the court views the record in the light most favorable to the nonmoving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990). Once the moving party makes the necessary showing, however, the nonmoving party must go forward and produce evidentiary facts to support his contentions. Barwick, 736 F.2d at 958-59. A "mere scintilla" of evidence is not enough to create a fact issue; there must be evidence on which a reasonable jury might rely. Id. In other words, the nonmoving party cannot create a genuine issue of material fact through "mere speculation or the building of one inference upon another." Id. at 963.

**IV. Discussion**

The tort of civil conspiracy contains three elements: (1) a combination of two or more persons; (2) for the purpose of injuring the plaintiff; and (3) causing plaintiff special damage. Kuznik v. Bees Ferry Associates, 538 S.E.2d 15, 31 (S.C. Ct. App. 2000). Defendant argues that plaintiff has not met the Fourth Circuit's instructions regarding

4

special damages.

The Fourth Circuit instructed this court to determine if the damages pled meet South Carolina's definition of special damages. Citing Sheek v. Lee, 289 S.C. 327 (1986), the Fourth Circuit defined special damages as "damages for losses that are the natural and proximate, but not the necessary, result of the injury."[1] James v. Pratt and Whitney, 2005 WL 670623, at *4 (4th Cir. March 23, 2005). With that definition in mind, this court is to "address whether the alleged damages . . . were the proximate, but not the necessary result of Pratt & Whitney's alleged conspiracy." Id. at *7. Plaintiff claims damages for lost wages, lost benefits, consequential economic damages, emotional distress, and injury to reputation. Defendant argues that all of these damages necessarily result from the alleged conspiracy; i.e., that they are "exactly those damages that one would expect to flow from" the alleged conspiracy to terminate him. If the damages are the necessary result of the injury, then they are not special damages as defined in Sheek.     Plaintiff does not address the Sheek definition, but cites to other South Carolina civil conspiracy cases in which the damages seem to be the direct result of the injury (and thus inconsistent with the Sheek definition). However, defendant suggests this court must follow Sheek under the "law of the case doctrine." This doctrine posits that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." United States v. Aramony, 166 F.3d 655, 661 (4th Cir. 1999). "Once the decision of an appellate court establishes the 'law of the case,' it must be followed in all

---

[1] Wright & Miller define special damages as "those elements of damages that are the natural, but not the necessary or usual, consequence of the defendant's conduct, and typically stem from and depend upon the particular circumstance of the case." Wright & Miller, 5A Fed. Prac. & Proc. Civ. 3d 1310 (2005).

subsequent proceedings in the same case in the trial court or on later appeal," unless new evidence has been introduced, an intervening opinion has been handed down, or "the prior decision was clearly erroneous and would work manifest injustice." Id.  Sheek is the "law of this case" because the Fourth Circuit specifically and repeatedly directed this court to analyze plaintiff's damages under that standard.

Plaintiff does not address the "law of the case" rule, but argues the Sheek definition is inconsistent with subsequent state supreme court decisions.  In Gynecology Clinic, Inc. v. Cloer, 514 S.E.2d 592, 593 (1999), the South Carolina Supreme Court upheld a civil conspiracy verdict against anti-abortion protestors which stemmed from their demonstrations outside an abortion clinic.  The protestors aimed to "discourage women from patronizing respondent's business with the goal of making abortion unavailable." Cloer, 514 S.E.2d at 592.  The court noted that the protestors' "own literature, which claims to have damaged respondent by causing a dramatic drop in the number of abortions performed at the clinic, is itself evidence of damages." Id.  Plaintiff contends that Cloer demonstrates that damages arising from the direct nature of the conduct are not inconsistent with a civil conspiracy claim for damages.  Whether Cloer and Sheek can be reconciled is debatable, but Cloer does suggest a more expansive view of special damages in the civil conspiracy context.  However, it does not seem that the Fourth Circuit's decision to follow the Sheek definition of special damages is erroneous, nor would it work a manifest injustice.  The definition of special damages adopted by the South Carolina Supreme Court in Sheek is consistent with the majority of case law on the subject in South Carolina.  E.g., Lipscomb v. Tanner, 9 S.E. 733, 734 (S.C. 1889); Sonneborn and Co. v. Southern Ry. Co., 44 S.E.2d 77, 78-79 (S.C. 1903); Carolina Life Ins. Co. v. Bank of

6

Greenwood, 60 S.E.2d 599, 605 (S.C. 1950); Hobbs v. Carolina Coca-Cola Bottling Co., 10 S.E.2d 25, 27 (1973); Kline Iron and Steel Co. v. Superior Trucking Co., 201 S.E.2d 388, 390 (S.C. 1973). As noted above, this definition is also in line with Wright & Miller. Additionally, the court in Cloer stated that "[t]he elements which go to make up [special] damages must depend on the nature of the act and the injury." Cloer, 514 S.E.2d at 593. Cloer's case by case approach suggests that not every set of facts will lead to a similar result.

Plaintiff's argument that damages necessarily resulting from defendant's conduct may constitute grounds for civil conspiracy cannot stand. Special damages are an element of the tort of civil conspiracy in South Carolina, and they are defined as damages that naturally and proximately result from defendant's conduct but do not necessarily flow. To allow a plaintiff to recover on a claim of civil conspiracy without alleging special damages would render the element meaningless.

The Fourth Circuit has instructed this court to review the issue of special damages in light of its opinion, and allowed plaintiff the opportunity to amend the complaint to properly plead special damages. Wright & Miller state that pleading special damages is required in two types of cases:

> In the first, the special damages sought are for items that are in addition to the general damages the law normally awards to compensate the plaintiff for the injury sought to be redressed and these items must be pleaded in accordance with Rule 9(g) and technically are part of the prayer for relief required in all cases by Rule 8(a)(3) . . . .
>     . . . [T]he purpose . . . is to protect the defendant against being surprised at trial by the extent and character of the plaintiff's claim.
>     . . . .
>     In the second class of cases, the existence of special damages is an *essential ingredient of the plaintiff's claim for relief;* in other words, as a

> matter of substantive law recovery is impossible without demonstrating that the plaintiff sustained such damages. To some degree, therefore, Rule 9(g) *demands more by way of a statement of this aspect of the claim than is required by Rule 8(a)(2).*

Wright & Miller, 5A Fed. Prac. & Proc. Civ. 3d 1310 (2005) (emphasis added). The case at bar is of the second type of cases described by Wright & Miller; pleading special damages are an element of civil conspiracy, and a failure to allege same is fatal to plaintiff's civil conspiracy claim. It is under this stricter standard that we must analyze whether plaintiff has met the burden of pleading special damages.

Rule 9(g) of the Federal Rules of Civil Procedure requires items of special damages to be specifically stated. When special damages are an element of a cause of action, plaintiff must show that the alleged damages are causally related to actual losses resulting from a defendant's tortious conduct. Hall v. City of White Plains, 185 F.Supp.2d 293, 304 (S.D.N.Y. 2002). Additionally, "non-conclusory allegations do not meet the pleading requirement." Id. Plaintiff claims damages of lost wages, lost benefits, severe emotional distress, and injury to his reputation as a mechanic and union member in a leadership position. (Compl. ¶ 48.) To survive defendant's motion for summary judgment, this court must determine that while these damages are a proximate and natural result of defendant's conduct, they do not necessarily flow from that conduct. In other words, "special damages are those damages which are of a relatively unusual kind and which, without specific notice to the adversary, may not be understood to be part of the claim." Ellis v. Crockett, 451 P.2d 814, 819 (Haw. 1969).

In his response to defendant's motion for summary judgment, plaintiff does not make any showing of how the alleged damages do not necessarily flow from defendant's

8

conduct and instead focuses on the Cloer case, which allowed damages that directly resulted from the defendant's conduct.[2] (Pl.'s Resp. at 12.) In fact, plaintiff seems to admit that his damages are not "special" in nature, claiming that "[a] review of cases involving Civil Conspiracy claims makes it clear that damages arising from the direct nature of the conduct giving rise to the claim at issue are not excluded from the Civil Conspiracy claim for damages." (Id.) Plaintiff merely alleges that he has suffered a myriad of damages ranging from lost wages to intentional infliction of emotional distress but has failed to point to actual special damages that he has suffered as a result of defendant's alleged actions. Plaintiff has failed to plead special damages with sufficient specificity to satisfy the required heightened pleading standards as established in Rule 9(g) of the Federal Rules of Civil Procedure. Unlike Cloer, there is no evidence of plaintiff's lost wages, lost benefits, consequential economic damages, severe emotional distress, or injury to his reputation that he claims he has suffered as a result of defendant's conduct. Even after the Fourth Circuit gave plaintiff the opportunity to amend his complaint to properly plead special damages, plaintiff has failed to do so. Because special damages are an element of plaintiff's civil conspiracy claim, and because special damages have been defined by the Fourth Circuit, plaintiff cannot prevail on his action for civil conspiracy because he has failed to allege special damages. Therefore, defendant's motion for summary judgment must be granted.

---

[2] Plaintiff did not address the Fourth Circuit's test for special damages and offered no argument in the Response regarding how his damages meet that test.

9

**V. Conclusion**

It is therefore,

**ORDERED**, for the foregoing reasons, that defendant's motion for summary judgment is **GRANTED**.

**AND IT IS SO ORDERED**.

_____
**David C. Norton**
**United States District Judge**

**December 14, 2005**
**Charleston, South Carolina**